UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | : | **Hon. Dickinson R. Debevoise** |
| Plaintiff, | : | Civil Action No. 09-1791 (DRD) |
| v. | : | **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |
| **GEORGE J. ALBINSON, FREDERICK N. ("FRED") BERGER, ANTHONY J. OLIVA, and L.E.A.D. INDUSTRIES, INC.**, | : | |
| | : | |
| Defendants. | | |

### PRELIMINARY STATEMENT

This memorandum of law is submitted on behalf of George J. Albinson in support of his motion to dismiss plaintiff's complaint pursuant to Fed R. Civ. P. § 9(b) and 12(b).[1]

### FACTUAL BACKGROUND

Plaintiff United States of America, fearful of the expiration of the statute of limitations regarding various construction claims, threw together a complaint against any defendant whose name appeared in documents in a file from 2003. Caught in the Government's dragnet is Mr. George J. Albinson, a respected Army civilian employee for over 25 years with an impeccable record. The Government's opaque complaint generally alleges various fraud claims against contractors and subcontractors relating to a contract for construction at a base called ARDEC (the "ARDEC Contract"). The contractors allegedly performed more physical construction at ARDEC (over installation of modular computer workstations) than reflected in the terms of the ARDEC Contract.[2]

---

[1] Although a motion to dismiss generally requires that the court deem the allegations contained in the complaint to be true, we have included Mr. Albinson's declaration to underscore the frivolous nature of the claim.

[2] The Government fails to annex the ARDEC Contract.

1

The allegations which mention Mr. Albinson, which are few and far between, are that Mr. Albinson allegedly signed three subcontractor invoices with this defect. However, conspicuously and fatally absent are, among other things, any allegations whatsoever that 1) the Government paid the three invoices signed by Mr. Albinson, 2) that the Government lost one penny as a result of the three invoices associated with Mr. Albinson or 3) that Mr. Albinson received one penny from the alleged fraud. The Government's complaint fails to allege the elements required to sustain its causes of action against Mr. Albinson, most likely because the Government could not responsibly allege each necessary element with respect to Mr. Albinson without violating Rule 11. Accordingly, the complaint should be dismissed under Fed R. Civ. P. §§ 12(b) and 9(b) for failure to state a claim with the requisite particularity.

## ARGUMENT

### POINT ONE

**PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY FOR FAILURE TO PLEAD WITH PARTICULARITY AS REQUIRED BY FED. R. CIV. P. 9(b)**

Plaintiff's complaint contains six causes of action and none of them satisfy Fed. R. Civ. P. 9(b)'s heightened pleading requirement. Plaintiff's first three causes of action allege violations of 31 U.S.C. § 3729(a)(1)(A)-(C), also known as the False Claims Act. Plaintiff's fourth cause of action is for common law fraud. Plaintiff's fifth cause of action is for payment under mistake of fact. Plaintiff's sixth cause of action is for unjust enrichment related to the same payments allegedly made under mistake of fact.

Fed. R. Civ. P. 9(b) states:

> "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally."

As the statute specifically names "fraud" and "mistake" causes of action, Rule 9(b) certainly applies to plaintiff's fourth cause of action for common law fraud and fifth cause of action for payment under mistake of fact.

Rule 9(b) also applies to the first, second and third causes of action under the False Claims Act. United States v. Karvelas, 360 F.3d 220, 228 (1st Cir. 2004), citing United States ex rel. LaCorte v. Smith-Kline Beecham Clinical Labs, Inc., 149 F.3d 227, 234 (3d Cir. 1998). ("Finally, every circuit court that has addressed this issue has concluded that the heightened pleading requirements of Rule 9(b) apply to claims brought under the FCA.")

Finally, Rule 9(b) applies to the sixth cause of action for unjust enrichment because the unjust enrichment is alleged to have resulted from payments made pursuant to the fraud or mistake. Allied Medical Associates v. State Farm Mutual Automobile Insurance Co., et al., 2009 U.S. Dist. LEXIS 33576 (E.D. Pa. April 20, 2009) ("Because Count III relies on 'mistake of fact' and is premised generally on State Farm's fraud allegations, I find that Rule 9(b) is applicable to State Farm's unjust enrichment claim.")  In the instant complaint, the sixth cause of action for unjust enrichment does nothing more than incorporate the prior fraud allegations in the complaint and state that defendants received monies to which they "were not entitled."

Plaintiff's complaint fails to meet the heightened pleading requirements of Rule 9(b) which apply to all of the causes of action in the complaint, especially with respect to Mr. Albinson.  Mr. Albinson is mentioned in only the following paragraphs of the complaint: 1, 9, 19, 20, 25, 26, 29, 33, 38, 41, 43, 44, and 47.  Paragraphs 1 and 9 identify Mr. Albinson. Paragraphs 19 and 20 allege that Mr. Albinson was the liaison between other Army officials and the contractor in the formation of the ARDEC Contract.  Paragraph 25 alleges that "[i]n many instances," Mr. Albinson approved invoices from a subcontractor called LEAD and then

submitted them to the prime contractor BPC, not the Government. Paragraphs 26, 29 and 33 identify three LEAD invoices which are alleged to have been approved by Mr. Albinson and "false," but are not specifically alleged to have been paid by the Government (the "3 Signed Unpaid Invoices").[3]

After the background allegations, paragraph 38 alleges in conclusory fashion that "[b]y virtue of the acts described above, Defendants Albinson, Berger, Oliva, and Lead knowingly presented…" a false or fraudulent claim to the Government. Paragraph 41 alleges in conclusory fashion that "[b]y virtue of the acts described above, Defendants Albinson, Berger, Oliva, and Lead knowingly made…" false statements to get a false or fraudulent claim paid by the Government. Paragraph 43 alleges in conclusory fashion that "[b]y virtue of the acts described above, Defendants Albinson, Berger, Oliva, and Lead knowingly conspired to defraud the Government…" Paragraph 44 alleges some of the elements of common law fraud in conclusory fashion in one paragraph against all defendants including Mr. Albinson. Paragraph 47 alleges in the alternative that payments were made under a mistake of fact. The unjust enrichment cause of action names all defendants generally.

These allegations do not satisfy the heightened pleading requirements of Rule 9(b) with respect to a fraud complaint that the complaint allege, among other things, "the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and **what that person obtained thereby**." United States v. Grubbs, 565 F.3d 180, 186 (5th Cir., April 8, 2009) (citations omitted, emphasis added). What invoices did Mr. Albinson present to the Government? What circumstances form the basis for the allegation that Mr. Albinson knew that any invoices were false? More importantly, what did Mr. Albinson, an

---

[3] In his declaration, Mr. Albinson characterizes the three LEAD documents as "memoranda" because they are communications between LEAD and BPC. However, since the allegations in the complaint are deemed to be true on a motion to dismiss, they will be referred to herein as the 3 Signed Unpaid Invoices.

Army employee, allegedly gain from approving a false invoice?  How was the Government damaged considering the complaint's admission that the Government never paid the only three invoices allegedly approved by Mr. Albinson?  What was the alleged conspiratorial agreement among Mr. Albinson, the contractor BPC and the subcontractor LEAD?  How was Mr. Albinson allegedly unjustly enriched?  The complaint's failure to include allegations of indispensable elements of each cause of action is fatal and requires its dismissal.

**POINT TWO**

**PLAINTIFF'S FIRST CAUSE OF ACTION FAILS TO STATE A CLAIM FOR KNOWING PRESENTMENT OF A FALSE OR FRAUDULENT CLAIM IN VIOLATION OF 31 U.S.C. § 3729(a)(1)(A).**

Section (a)(1)(A) of The False Claims Act states:

"(a) Liability for certain acts.

(1) In general.  Subject to paragraph (2), any person who--

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval…

is liable to the United States Government…"

The elements of a cause of action for a violation of section (a)(1)(A) of the False Claims Act are that the defendant 1) knowingly 2) presents 3) a claim, 4) which is false or fraudulent 5) for payment or approval.  The complaint fails to allege with heightened particularity all five of these elements with respect to Mr. Albinson.

First, the complaint presents no basis whatsoever for its conclusory allegation that Mr. Albinson knew any of the 3 Signed Unpaid Invoices were false.  Mr. Albinson worked for the Army.  If he knew the 3 Signed Unpaid Invoices were false and the Army was not getting the benefit of its bargain, he would not have any motivation to sign the invoices to the detriment of

his employer, the Army. His job was to get the Army the best deal possible. The complaint never alleges that Mr. Albinson received any kickbacks as an Army employee. Without some allegations about Mr. Albinson's motive to apparently act against his own interest and that of his employer, the complaint's allegations that Mr. Albinson acted knowingly in signing the 3 Signed Unpaid Invoices are conclusory and should not be considered by the Court. In Re Merrill Lynch & Co., Inc., 289 F.Supp.2d 416, 428 (S.D.N.Y. 2003) (citations omitted):

> "Plaintiffs further fail to allege facts showing motive and opportunity to commit fraud. To plead motive, plaintiffs must assert that defendants have benefitted in some concrete and personal way from the purported fraud…"

The complaint further fails to allege presentment. The complaint never alleges that Mr. Albinson <u>directly</u> presented any of the three invoices to the Government for payment or reimbursement. Nor does the complaint contain the requisite detailed allegations of a scheme involving Mr. Albinson to permit the <u>inference</u> that Mr. Albinson presented the invoices or caused them to be presented. For such an inference, the complaint must allege <u>both</u> the specific dates and content of the false claims to be presented (<u>United States v. Karvelas</u>, 360 F.3d 220 (1st Cir. 2004)) <u>and</u> the scheme which demonstrates the benefit to the specific defendant (<u>United States v. Grubbs</u>, <u>supra</u>, at 190) ("Standing alone, raw bills--even with numbers, dates, and amounts--are not fraud without an underlying scheme to submit the bills for unperformed or unnecessary work. It is the scheme in which particular circumstances constituting fraud may be found that make it highly likely the fraud was consummated through the presentment of false bills.")

Even if the 3 Signed Unpaid Invoices were presented to the Government by another entity, something the complaint never alleges, these invoices were not presented or caused to be presented by Mr. Albinson. In <u>Grubbs</u>, <u>supra</u>, the complaint alleged a detailed scheme whereby

6

two doctors in a hospital created false claims to be processed by the hospital and paid by the Government for the doctors' own personal benefit.  Upon the motion to dismiss by the individual doctors and the hospital, the Court found that the detailed allegations by the whistleblower concerning the doctors' scheme, as told by the doctors' to the whistleblower at a dinner meeting, were sufficient for the inference that the doctors "presented" or caused to be presented the claims for payment to the Government.  Why else, the Court reasoned, would the doctors create the false claims and tell the whistleblower about it merely as a charade when presenting those false claims would create a financial benefit for the individual doctors?

As to the hospital, however, the Court ruled: "[t]he Hospital may have been inadvertently and in the normal course of business processing the claims of services fraudulently exaggerated by its doctors.  We have no basis for inferring otherwise."  Here, like with the hospital in Grubbs, Mr. Albinson's uncompensated signature is not what allegedly "caused" the 3 Signed Unpaid Invoices to be presented to the Government; as alleged, it was the contractors' desire to get paid. United States v. Bartlett, 234 F.R.D. 113, 126 (W. Dist. Pa. 2006) ("'causation' element of a false claim" not satisfied even by allegations that a defendant "sat and watched as the bank was robbed;" only satisfied if defendant alleged in scheme had reason to profit by presentment); Id. at 125 (in order to allege causation under 31 U.S.C. § 3729(a)(1), the complaint must allege how the defendant "benefitted" from the presentment, like by a kickback).

George Albinson never "presented" the 3 Signed Unpaid Invoices to the Government for payment.  He was the Government.  The 3 Signed Unpaid Invoices were presented to him. Absent allegations in the complaint that Mr. Albinson was a corrupt employee receiving kickbacks for his signature, the element of presentment is absent.  Mr. Albinson did not cause the 3 Signed Unpaid Invoices to be presented; they already had been presented…to him.

7

The complaint never alleges that the 3 Signed Unpaid Invoices were a "claim" as defined in section (b)(2) of the False Claims Act. Although the complaint alleges that the 3 Signed Unpaid Invoices were sent to a Government contractor, the complaint never alleges that the Government paid, reimbursed, intended to pay, or decided not to pay the claim. The complaint only alleges that the 3 Signed Unpaid Invoices were a matter between the contractor and the subcontractor LEAD. The complaint merely states "[I]n many instances, the subcontractor's invoice was submitted to the government agency's program manager for approval. The government contractor then submitted its own invoice for payment to GSA Finance – Fort Worth, which made an electronic payment into the contractor's bank account." Well, were the 3 Signed Unpaid Invoices one of those "many instances" or not? It seems not because the complaint never alleges that the 3 Signed Unpaid Invoices were paid, electronically or otherwise, and the complaint never alleges that the 3 Signed Unpaid Invoices were specifically incorporated into any of the contractor's own invoices.

The complaint never properly alleges that the 3 Signed Unpaid Invoices were false or fraudulent. The complaint has three conclusory allegations that the 3 Signed Unpaid Invoices were false. However, the complaint later alleges that the 3 Signed Unpaid Invoices were not false in that no work was done, but false in that the work done and received by the Government was weighted more towards construction and demolition rather than installation of workstations. It is noteworthy that the Government does not attach the contract at issue here, or any other documents which would demonstrate whether there were any deviations from the ARDEC Contract. "Courts generally consider exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1992, 1996 (3d Cir. 1993).

In any event, "[v]iolations of laws, rules, or regulations alone do not create a cause of action under the FCA." <u>United States ex rel Clausen v. Lab Corp. of Am., Inc.</u>, 290 F.3d 1301, 1311 (11th Cir. 2002). The same is true for deviations from a contract with the Government. If the 3 Signed Unpaid Invoices for work actually performed and received are considered "false" or "fraudulent" for the purpose of the False Claims Act, then any legitimate invoice for work actually performed and received which contains a mistake, or which deviates from the contract, or which is done pursuant to a contract which did not end up being signed by the right parties, would be considered a "false claim."

As argued <u>supra</u>, Mr. Albinson never presented the 3 Signed Unpaid Invoices "for payment or approval." As alleged in the complaint, he <u>was</u> the Government, the payor and the approver. The complaint itself alleged that, "[i]n many instances," Mr. Albinson "approved" the LEAD invoices. Complaint ¶ 25. As a matter of logic, Mr. Albinson cannot present something for approval when he is the very person to approve it.

In sum, the complaint does not contain the necessary allegations <u>against Mr. Albinson</u> under section (a)(1)(A) of the False Claims Act. The complaint presents no scheme whereby the Court could reasonably infer that Mr. Albinson knew that the 3 Signed Unpaid Invoices were a false or fraudulent claim and that he presented them for payment or approval to the Government. Accordingly, the first cause of action should be dismissed as against Mr. Albinson.

## POINT THREE

**PLAINTIFF'S SECOND CAUSE OF ACTION FAILS TO STATE A CLAIM FOR KNOWING USE OF A STATEMENT MATERIAL TO A FALSE OR FRAUDULENT CLAIM IN VIOLATION OF 31 U.S.C. § 3729(a)(1)(b).**

Section (a)(1)(B) of The False Claims Act states:

"(a) Liability for certain acts.

(1) In general. Subject to paragraph (2), any person who--

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim…

is liable to the United States Government…"

The elements of a cause of action for a violation of section (a)(1)(B) of the False Claims Act are that the defendant 1) made, used, or caused to be made or used, 2) a false record or statement, 3) material 4) to a false or fraudulent claim.

Here, the complaint never alleges that Mr. Albinson made the 3 Signed Unpaid Invoices. He only signed them after they were made. Nor does the complaint allege that he "used" them. As discussed supra, allegations that he "caused" the 3 Signed Unpaid Invoices to be made or used are insufficient. Even if his signature was necessary for the subcontractor or contractor to "use" the invoices themselves, this does not mean that he "caused" the contractor or subcontractor to use them; the cause was the contractor's desire to be paid. Again, the causation element of a false claim is only satisfied by allegations that the defendant benefitted or would benefit by causing the claim to be used. United States v. Bartlett, supra, at 125. No such allegations are present here.

As discussed supra, the alleged fraudulent nature of the 3 Signed Unpaid Invoices consists solely of a deviation from an alleged contract, not that the work billed was not actually performed. The complaint never alleges how the 3 Signed Unpaid Invoices were "material" to a false or fraudulent claim submitted by the contractor because, as discussed supra, the complaint never alleges whether the 3 Signed Unpaid Invoices consisted of zero, one, two or three of the instances in which a subcontractor's claim was incorporated into the contractor's claim or describes how exactly that incorporation was accomplished. Finally, as discussed supra, the complaint never alleges that the claim to which the 3 Signed Unpaid Invoices relates is false itself, other than as a possible deviation of performing more construction rather than installation. Accordingly, the second cause of action should be dismissed in its entirety.

### POINT FOUR

**PLAINTIFF'S THIRD CAUSE OF ACTION FAILS TO STATE A CLAIM UNDER 31 U.S.C. § 3729(a)(1)(C) FOR CONSPIRACY TO VIOLATE THE FALSE CLAIMS ACT**

Section (a)(1)(C) of The False Claims Act states:

"(a) Liability for certain acts.

   (1) In general. Subject to paragraph (2), any person who--

      (C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G)…

is liable to the United States Government…"

In order to make out a cause of action for a False Claims Act conspiracy, the plaintiff must allege "(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by the Government and (2) at least one act performed in furtherance of that agreement." United States v. Grubbs, supra, at 193. Most importantly, the allegations about the unlawful agreement must "indicate which Defendants entered into that

11

agreement." United States v. Barlett, supra, at 123.  The complaint never alleges that George Albinson entered into a conspiratorial agreement with anybody, and as such, the conspiracy cause of action must fail.  Id. at 124 ("Nowhere are the Defendants who are alleged to have entered into an agreement identified by name.") (dismissing false claims act conspiracy cause of action).  Accordingly, the third cause of action must be dismissed as against Mr. Albinson.

### POINT FIVE

**PLAINTIFF'S FOURTH CAUSE OF ACTION FAILS TO STATE A CLAIM FOR COMMON LAW FRAUD WITH RESPECT TO MR. ALBINSON.**

Plaintiff casts its fourth cause of action as one of common law fraud against all defendants when a breach of contract case against the contractors and subcontractors for allegedly breaching the ARDEC Contract would have been more appropriate.  In any event, "[t]he five elements of a cause of action for fraud in New Jersey are (1) a material misrepresentation by defendant of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the plaintiff rely on it; (4) reasonable reliance on the statement by the plaintiff; and (5) actual damages." Gennari v. Weicher Co. Realtors, 148 N.J. 582, 610 (1997).  Plaintiff fails to properly allege all five elements.

Mr. Albinson's signature on the 3 Signed Unpaid Invoices does not constitute a misrepresentation.  Generally, a misrepresentation consists of affirmative language.  Sometimes a misrepresentation can come in the form of an omission.  A signature by one person attached to a misrepresentation made by another can sometimes constitute a misrepresentation itself, but only if the signature itself is an indispensable component of the misrepresentation.  In re Zenith Laboratories Securities Litigation, 1993 U.S. Dist. LEXIS 18478, Fed. Sec. L. Rep. (CCH) P97617 (D.N.J. Feb. 11, 1993) (corporate officers' signatures on disclosure considered

12

misrepresentation only because officers had legal duty under securities law to sign disclosure); Prime Rate Premium Finance Corp. v. Charles S. Nenner Insurance Associates, Inc., 2007 U.S. Dist. LEXIS 52857 (E. Dist. Pa. 2007) ("Charles Nenner's signature therefore constituted a misrepresentation…[because] Prime Rate was entitled by [insurance] law to the name of the agent actually placing the insurance policy.")

Here, the Government never alleges that the misrepresentation by the contractors contained in the invoices did not constitute a misrepresentation unless and until it was signed by Mr. Albinson. Indeed, the complaint itself alleged that, "[i]n many instances," Mr. Albinson "approved" the LEAD invoices. Complaint ¶ 25. The complaint never states that Mr. Albinson had to sign the invoices for them to become effective or even that any Army employee had to sign them. The complaint identifies many invoices that were paid without Mr. Albinson's signature. Accordingly, Mr. Albinson's signature on the 3 Signed Unpaid Invoices does not constitute a misrepresentation.

As discussed supra, the complaint only contains conclusory allegations that Mr. Albinson "knew" or "believed" that the 3 Signed Unpaid Invoices were false. Again, as the Army employee being duped, Mr. Albinson had nothing to gain but everything to lose by signing a false invoice. The complaint contains no allegations, such as that Mr. Albinson entered into a conspiratorial agreement with personal kickbacks, that would allow the reader to infer that Mr. Albinson would sign an invoice he knew was not true to his own detriment.

The complaint never contains the allegation that Mr. Albinson intended that the Government rely on his signature. Even if it did, such an allegation would be conclusory. Again, the complaint never alleges that Mr. Albinson's signature was indispensable to the

Government's payment of invoices and, to the contrary, alleges that many invoices were paid without Mr. Albinson's signature.

The complaint contains only a conclusory allegation that the Government reasonably relied upon the general misrepresentations of all defendants and never alleges that it specifically relied on Mr. Albinson's signature on the 3 Unpaid Signed Invoices. To the contrary, the complaint alleges that sometimes it paid invoices without Mr. Albinson's signature and hence did not rely on the signature.

In addition, any reliance would not be reasonable when the facts behind the alleged fraud could be easily discovered through the exercise of ordinary intelligence. If the Government thought that too much furniture over computer workstations was being built pursuant to the ARDEC Contract, it could have simply checked itself. It is simply incredible that Mr. Albinson was somehow keeping the details of a large construction project a secret all to himself. Either other Army officials approved the furniture over computer workstations just like Mr. Albinson allegedly did, or Mr. Albinson remained unaware just like the others.

The reasonable reliance element also requires that the plaintiff allege transaction causation and loss causation. In Re Intelligroup Securities Litigation, 527 F.Supp.2d 262, 295 (D.N.J. 2007) (citing Judge Posner that transaction causation and loss causation elements in securities litigation stem from the common law fraud requirements). Here, again, Mr. Albinson's signature on the 3 Signed Unpaid Invoices did not cause the Government to enter into any transaction or make any payment. The complaint alleges that Mr. Albinson signed invoices only some of the time, and indeed alleges that <u>all</u> the payments were made on invoices Mr. Albinson did <u>not</u> sign. For this same reason, the complaint does not allege loss causation. Not only were the 3 Signed Unpaid Invoices never alleged to have been paid, but all the invoices in

14

the complaint are admittedly for work done, just allegedly different work than allegedly described in the omitted ARDEC Contract. The allegation of damages is therefore also lacking.

Plaintiff's common law fraud cause of action should also be dismissed because it is duplicative of and properly should be a breach of contract cause of action against the contractors and/or subcontractors. Work allegedly not performed pursuant to a contract gives rise to a cause of action for breach of contract, not fraud, unless the complaint alleges that the contracting party had no intention to perform the contract when it was formed. The complaint makes no such allegation with respect to Mr. Albinson or any of the defendants.

### POINT SIX

#### PLAINTIFF'S FIFTH CAUSE OF ACTION FOR PAYMENT UNDER MISTAKE OF FACT FAILS TO STATE A CLAIM WITH RESPECT TO MR. ALBINSON

The complaint fails to allege payments under mistake of fact with respect to Mr. Albinson because it never alleged that it made any payments to him or that any money from any of the payments flowed to him in anyway or even that it paid any of the 3 Signed Unpaid Invoices to the subcontractor. Payment under mistake of fact is the cause of action generally used by the Government when it mistakenly sends out government assistance checks to the wrong recipients or for the wrong amounts. Accordingly, the Government would have to show that it actually made overpayments, not that furniture was built instead of workstations for this cause of action to succeed against the other defendants anyway. Finally, payment under mistake of fact is duplicative of unjust enrichment, the complaint's sixth cause of action. <u>United States ex rel Miller v. Harbert</u>, 505 F. Supp.2d 20, 24 (D.C. District, 2007).

## POINT SEVEN

### PLAINTIFF'S SIXTH CAUSE OF ACTION FOR UNJUST ENRICHMENT FAILS TO STATE A CLAIM WITH RESPECT TO MR. ALBINSON

The Government's sixth cause of action for unjust enrichment is downright frivolous as to Mr. Albinson. The complaint never alleges anywhere that Mr. Albinson was enriched in anyway. In addition, a cause of action for unjust enrichment is not appropriate where there is a governing contract, here, the ARDEC Contract. Finally, this cause of action must fail as to all defendants because the whole point of the complaint is that the wrong work was performed, not that payments were made for work that was never performed. Accordingly, no defendant was alleged to have been unjustly enriched. Work was performed and paid for; the thrust of the complaint is that it was the wrong work under the ARDEC Contract, but the complaint contains no cause of action for breach of contract!

## POINT EIGHT

### PLAINTIFF SHOULD NOT BE GIVEN LEAVE TO REPLEAD OR AMEND

Leave to replead should not be granted where, as here, the circumstances underlying the complaint fail to make out any cognizable cause of action against Mr. Albinson. This complaint should be dismissed, not because it was inartfully pleaded, but because the transactions it describes fail to make out any claim that our law will recognize against Mr. Albinson. The Government should not be allowed a reprieve of the statute of limitations by filing a frivolous complaint right before its expiration and then attempting to amend or replead.

## **CONCLUSION**

For the foregoing reasons, defendant respectfully requests an Order dismissing plaintiff's complaint, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
            August 27, 2009

| | |
|---|---|
| **LAUFER, DALENA, CADICINA, JENSEN & BOYD, LLC** <br> *Local Counsel for George J. Albinson* | **KORNFELD & ASSOCIATES, P.C.** <br> *Attorneys for Defendant George J. Albinson* |
| __/s/ William Laufer_____ <br> William Laufer <br> 23 Cattano Avenue <br> Morristown, NJ  07960 <br> (973) 285-1444 | By: /s/ Randy Kornfeld_____ <br> Randy Kornfeld <br> 570 Lexington Avenue, 17th Floor <br> New York, New York 10022 <br> (212) 759-6767 |